UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

JACKLINN RAE BRAYAN &
JEFFERY SIMON BRAYAN,

    Debtors.

_____/

Case No. BM 25-90087
Chapter 13

## OPINION REGARDING DEBTORS' MOTIONS TO ENFORCE CONTRACTUAL OBLIGATIONS AND TO ENFORCE THE AUTOMATIC STAY

Appearances:

Jacklinn Rae Brayan and Jeffery Simon Brayan, *pro se* Debtors.

Sandra S. Hamilton, Esq. and David Centner, Esq., attorneys for the Mackinac County Treasurer.

Andrew Thompson, Esq., attorney for the Genesee County Treasurer.

Jeremy R.M. Piper, Esq, Respondent and state court attorney for the Genesee County Land Bank.

Stacy M. Davis, Esq, attorney for Kurt A. Steinke, Chapter 13 Trustee.

### I.  INTRODUCTION AND JURISDICTION.

Currently before the court are four contested matters filed by *pro se* Debtors, Jacklinn Rae and Jeffery Simon Brayan (the "Debtors").[1]  The matters relate to several parcels of real property the Debtors purport to own which are located in Genesee County

---

[1]     A fifth contested matter, the Debtors' objection to the proof of claim filed by New Rez, LLC d/b/a Shellpoint Mortgage Servicing (Dkt. No. 34) was heard on the same date as the four contested matters discussed herein.  However, the court requested supplemental evidence with respect to the New Rez claim objection, and as a result, that matter is not addressed in this opinion.

and Mackinac County, Michigan.  The common thread running through the majority of the relief requested by the Debtors is their assertion that they have "lawfully opted out of" paying property taxes relating to those properties.  This is apparently based on the Debtors' understanding that they hold allodial title to the properties tracing back to land patents issued by the United States government in the mid-1800's.[2]  Although the issue is not squarely before the court, the court notes that the Debtors' position on this point has been routinely rejected by Michigan and federal courts that have considered the issue.  *See Barry County Treasurer v. Klinge*, 2013 WL 85902, *1 (Mich. App. Jan. 8, 2013) ("Where federal land is sold to a private person, it becomes part of the general mass of property in the state and is subject to *ad valorem* property taxation.") (quoting *Bay Mills Indian Community v. State of Michigan*, 626 N.W.2d 169, 172 (Mich. App. 2001) (citing *Oklahoma Tax Comm. v. Texas Co.*, 336 U.S. 342, 353, 69 S. Ct. 561 (1949)); *see also United States v. Manke*, 2012 WL 1898757, *6 (W.D. Mo. May 23, 2012) ("The concept of allodial title to land is an archaic concept not recognized in modern United States law for property ownership by individuals.").

Regardless, the Debtors' (likely erroneous) understanding of the law has caused them to fail to pay property taxes on the properties at issue for several years.  When those failures resulted in foreclosure actions against the properties, the Debtors filed complaints about the "unconstitutional" taxes with the United States Space Force, and ultimately,

---

[2]     Black's Law Dictionary defines allodial title as "[r]eal-property ownership without a duty of service to, control by, or acknowledgment of any superior landlord."  *Title (allodial)*, BLACK'S LAW DICTIONARY (12th Ed. 2024).  In modern times, the concept refers to a type of claim advanced by litigants who believe that allodial title represents the highest form of property ownership and can be used "'to prevent foreclosure,' the taking of property by eminent domain, or the acquiring of property by tax sale deeds."  *Chermak v. Carter*, 2014 WL 6815797, *7 (W.D. Ark. Dec. 2, 2014) (quoting *Flores v. Wells Fargo Bank, N.A.*, 2013 WL 1192767 (E.D. Wis. Mar. 22, 2013) (additional citations omitted).

sought bankruptcy protection in this court.  In furtherance of their beliefs that they hold allodial title to the properties, the Debtors also sent prepetition documentation to the Genesee and Mackinac County Treasurers asking them to provide proof of the validity of their tax claims.  When the Treasurers failed to respond, the Debtors unilaterally deemed them to have acquiesced to the Debtors' view that the property taxes were void and not owed.  Two of the motions currently before the court seek to enforce the "prepetition contractual obligations" allegedly created by these documents.[3]  Two additional motions allege that the Genesee County Treasurer and its successor in interest, the Genesee County Land Bank (the "Land Bank"), violated the automatic stay by pursuing foreclosure and eviction proceedings due to unpaid property taxes on parcels located in Grand Blanc, Michigan.[4]

The court has jurisdiction over this bankruptcy case.  28 U.S.C. § 1334.  The case has been referred to this bankruptcy court for determination.  28 U.S.C. § 157(a); LGenR 3.1(a) (W.D. Mich.).  The contested matters before the court are core proceedings.  28

---

[3]      *See* Debtors' *Ex Parte* Motion to Enforce Contractual Obligation of Genesee County Treasurer (Dkt. No. 29) and Debtors' *Ex Parte* Motion to Enforce Contractual Obligation of Mackinac County Treasurer (Dkt. No. 31).

[4]      *See* Debtors' *Ex Parte* Motion to Enforce the Automatic Stay with Sanctions (Dkt. No. 28) and Debtors' *Ex Parte* Motion for Contempt of Court and Obstruction of Court Order (Dkt. No. 50).

The Debtors' motion for contempt of court, which challenges the postpetition eviction proceedings, also names the Treasurer personally, the Executive Director of the Land Bank, the Land Bank's attorney, and the state court magistrate judge presiding over the eviction proceedings.  For clarity, the court's analysis will focus on the allegations in the motion for contempt as against the Land Bank.   However, as explained in notes 10 & 12 *infra*, the court finds that there is no evidence that the individual representatives of the Land Bank or the state court judge had knowledge of the bankruptcy case such that their alleged violations of the automatic stay could have been "willful."  There is likewise no evidence that the Genesee County Treasurer personally took any actions against the Debtors after the filing of the bankruptcy petition.

3

U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate) and (O) (other proceedings affecting the adjustment of the debtor-creditor relationship).

## II.  FACTS AND PROCEDURAL BACKGROUND.

A.      Mackinac County Properties.

The Debtors' Amended Schedules A/B claim an interest in three parcels of real property located in Mackinac County, Michigan:  (1) a parcel located on H-33 in Curtis, Michigan with a scheduled value of $46,520; (2) a parcel located on Burk Road in Curtis, Michigan with a scheduled value of $59,400; and (3) the Debtors' residence located at N9650 Burk Road, Curtis, Michigan with a scheduled value of $102,000.[5]  (Dkt. No. 23.)

A proof of claim filed by the Mackinac County Treasurer asserts that the Debtors failed to pay property taxes on the Burk Road and H-33 properties for the years 2022, 2023, and 2024, and that the Debtors owe the County $9,242.33 in delinquent taxes on those parcels.  (*See* Claim 4-1.)

The property located at N9650 Burk Road in Curtis is subject to a note and mortgage, now held and/or serviced by New Rez, LLC (d/b/a Shellpoint Mortgage Servicing).  New Rez, LLC has filed a proof of claim for amounts due under the note and mortgage.  The claim is a secured claim in the amount of $177,492.74.  (*See* Claim 3-1.) The Debtors have objected to the New Rez claim, primarily arguing that New Rez is not the appropriate party to have filed the claim because it is the servicer of the mortgage debt, but not the actual creditor.

---

[5]      Prior versions of the Debtors' schedules value this property at $275,000.  (*See* Dkt. Nos. 1 & 19.)

B.      Genesee County Properties.

In their Amended Schedules, the Debtors also claim an interest in four parcels of real property located in Genesee County, Michigan:  (1) a single family home located at 8525 Fenton Road, Grand Blanc, Michigan with a scheduled value of $132,000; (2) a vacant adjacent parcel on Fenton Road; (3) a second vacant adjacent parcel on Cook Road; and (4) a property located at 1329 E. Reid Road, in Grand Blanc, Michigan.[6]  (Dkt. No. 23.)

Responsive pleadings filed by the Genesee County Treasurer state that the "record title" to the property at 8525 Fenton Road and the adjacent parcels is actually held by Flagstone, LLC, a Michigan limited liability company for which Jacklinn Brayan is listed as the resident agent.  (Dkt. No. 38, at Exhs. 1, 2 & 3.)  The Treasurer further states that a non-profit corporation, Youth & Community Fund of Genesee County, Inc. holds an "unidentified interest" in the properties.  (*Id*. at p. 8.)  Both Debtors are listed as officers and/or directors of this non-profit entity.  (*Id*. at Exhs. 1, 2 & 3.)  Regardless of which of these entities currently hold title, the Treasurer asserts that a title search on these properties shows that the Debtors have never personally held an ownership interest in the properties. The Debtors have not disputed this assertion, and the documentation

---

[6]      The Debtors' schedules show the Debtors as having a one percent ownership interest in the Reid Road Parcel.  In an objection to a proof of claim filed by the Debtors on its behalf, which is not addressed in this opinion, the Genesee County Treasurer indicates that the Reid Road Parcel is currently owned by Flagstone, LLC and Travis Brayan.  (*See* Dkt. No. 83 at ¶ 5.)  The objection also notes that a Property Transfer Affidavit alleging that the Reid Parcel was transferred to the Youth and Community Fund of Genesee County, Inc., was filed with Grand Blanc Township in January 2024, but that no documentation of such transfer was ever recorded with the Genesee County Register of Deeds.  In any event, the Treasurer states that the Debtors do not have an ownership interest in the Reid Road Parcel, that delinquent taxes on the Reid Road Parcel were paid in February 2026, and that the Reid Road Parcel was not included in the tax foreclosure sale discussed herein.

provided by the Treasurer confirms its representations on this point. It is also undisputed that the Debtors' schedules and Statement of Financial Affairs do not disclose an interest in either Flagstone, LLC or the Youth & Community Fund of Genesee County, Inc.

As discussed in greater detail below, *see infra* Part III.B, the Genesee County Treasurer instituted foreclosure proceedings for delinquent taxes owed on the 8525 Fenton Road property and the adjacent parcels on May 31, 2024. (Dkt. No. 38, Exh. 4.) The Debtors did not appear at the hearings regarding the tax foreclosure,[7] and a Final Judgment of Foreclosure was entered by the state court on February 11, 2025. (*Id*. at p. 9 & Exh. 9.) The redemption period expired on March 31, 2025, and accordingly, title to the properties vested with the Treasurer on April 1, 2025. (*Id*. at p. 9-10 & Exh. 9.)

C.     The Bankruptcy Filing.

The Debtors filed their chapter 13 petition in this court on July 24, 2025. At the hearing on the present motions, Mrs. Brayan indicated that the bankruptcy filing was prompted by the "illegal foreclosures" involving the various properties. She confirmed that the Debtors have lived in Curtis, Michigan since 2001, as indicated in the Debtors' schedules. She further stated that the Debtors have been living at the home in Grand Blanc, which was formerly her parents' home, since at least October 2025, due to Mr. Brayan's health issues. No party disputed these representations.

---

[7]     Although there is nothing in the record showing that the Debtors took action to formally oppose the tax foreclosure, an order entered by the Genesee County Circuit Court on February 16, 2024, and attached to pleadings filed by the Genesee County Treasurer in another contested matter before this court, indicates that the Debtors opposed prior attempts at foreclosure by raising arguments similar to those raised here. The state court's order overruled the Debtors' objections to the prior foreclosure, including their arguments that the property is immune from taxation. (*See* Dkt. No. 83, Exh. 9.)

6

More than eight months into the bankruptcy case, the court still has not confirmed a chapter 13 plan. The current plan proposed by the Debtors is subject to objections by both County Treasurers and New Rez,[8] all relating to failure of the proposed Plan to provide for payment of delinquent taxes and amounts due under the note and mortgage and questions regarding the Debtors' ownership interest in the properties. The Chapter 13 Trustee has also filed an objection to confirmation, raising issues regarding the Debtors' valuation and proposed retention of the real property, as well as their failure to adequately fund the plan, to commit all disposable income, to file tax returns, to provide documentation to the trustee, and to disclose business and property interests in the bankruptcy case. Of the nine total claims filed in the case, five have drawn objections from the Debtors. Three others, including one claim for over $13 million, were filed by the Debtors and list themselves as creditors. (*See, e.g.,* Claim No. 7.)

The Debtors' motion to enforce the automatic stay against the Genesee County Treasurer and the motions to enforce contractual obligations were initially filed in October 2025. (Dkt. Nos. 28, 29 & 31.) The court scheduled hearings on the motions for December 5, 2025. Those hearings were adjourned at the Debtors' request, because Mr. Brayan was experiencing serious medical issues. The Debtors filed their motion for contempt against the Genesee County Treasurer and the Land Bank on December 26, 2025. (Dkt. No. 50.) That motion was scheduled for hearing on February 5, 2026, along with the other adjourned motions. On January 30, 2026, just prior to the scheduled hearings, the Debtors filed a motion seeking to adjourn at least one of the hearings. (Dkt. No. 57.) The court denied that motion. (Dkt. No. 58.) Mrs. Brayan subsequently

---

[8]     The United States Internal Revenue Service had previously objected to the plan but withdrew that objection on March 3, 2026.

7

contacted chambers requesting permission to attend the February 5 hearings via videoconferencing because Mr. Brayan was physically and mentally unable to attend in person due to his ongoing health issues, and because Mrs. Brayan is required to provide physical care for him 24/7.  The court granted Mrs. Brayan's request and entered an order permitting all parties to appear by videoconferencing on February 5.  During the hearings on February 5, the court took argument from the Debtors and from opposing counsel.[9]  At the conclusion of the hearings, the court took all of the matters under advisement.

## III.  <u>DISCUSSION</u>.

A.   <u>Debtors' Motions to Enforce Contractual Obligations of the Genesee and Mackinac County Treasurers</u>.

The Debtors' motions ask this court to "enforce prebankruptcy agreements" between Mrs. Brayan and the Mackinac and Genesee County Treasurers, respectively. Again, the Debtors' claims on this point appear to stem from their general belief that they have "lawfully opted out of property taxes by obtaining an allodial title, land patent." (*See, e.g.*, Dkt. No. 31, at p. 3)

This belief led the Debtors to send numerous documents to the Mackinac County Treasurer.  On February 22, 2025, Mrs. Brayan sent Tina Massey, Mackinac County Treasurer, a document entitled CONDITIONAL ACCEPTANCE FOR VALUE FOR PROOF OF CLAIM AFFIDAVIT.  (Dkt. No. 31, Exh. 2.)  The document asks the Treasurer to provide various types of "documentary evidence" and "law," which are difficult to

---

[9]    A transcript of the February 5, 2026, hearings is available on the court's docket.  (Dkt. No. 91.)  The transcript is cited herein as "Tr. at ___."

understand but appear to generally pertain to the Treasurer's authority to assess and collect property taxes.  The Mackinac County Treasurer did not respond to this document.

Based on the lack of response, Mrs. Brayan sent the Treasurer additional documents, including a NOTICE OF DEFAULT AND DISHONOR, OPPORTUNITY TO CURE AFFADIVIT dated March 10, 2025, a NOTICE OF DEFAULT AND ASSENT BY NON-RESPONSE AFFIDAVIT dated March 22, 2025, and a NOTICE OF DEFAULT AND ASSENT BY NON-RESPONSE AFFIDAVIT, CERTIFICATE OF NON-RESPONSE AND DISHONOR COMMERCIAL OATH AND VERIFICATION and TRUE BILL dated March 25, 2025. (Dkt. No. 31, Exh. 4 & 5.)  These documents indicate that Mrs. Brayan viewed the Treasurer's failure to respond to the "inquiries" in the initial Conditional Acceptance document as having been "agreed to (admitted/acknowledged) by tacit procuration." (Dkt. No. 31, Exh. 5.)  The True Bill purports to be an "agreed upon judgment" for $188,698.35 in damages relating to the Treasurer's alleged trespass on the Debtors' land, illegal collection of taxes from the Brayan family, fraudulent mortgage charges, and fees incurred by Mrs. Brayan in mortgage actions.  (*Id*.)

On June 10, 2025, the Debtors unilaterally recorded a document entitled DISCHARGE OF PROPERTY TAX with the Mackinac County Register of Deeds.  (Dkt. No. 31, Exh. 7.)  The document states that based on the Treasurer's "tacit contract" (i.e., failure to respond to Mrs. Brayan's other prior unilateral documents and requests) all tax obligations – past, present or future – on the Debtors' properties had been released and discharged.

The Debtors' current motion against the Mackinac County Treasurer asks this court to enforce the "pre-bankruptcy contracts" between Mrs. Brayan and the Treasurer,

thereby rendering the County's claim for back taxes "null and void" and discharged prior to the bankruptcy filing. The motion also asks for a determination that the Treasurer owes Mrs. Brayan $208,698.35 in damages as stated in the Default Notice/True Bill. (Dkt. No. 31, Proposed Order.)

Mrs. Brayan sent similar documentation to the Genesee County Treasurer, beginning with a CONDITIONAL ACCEPTANCE FOR VALUE PROOF OF CLAIM AFFIDAVIT which was dated December 10, 2024. (Dkt. No. 29, at Exh. 2.) Several notices of default and certificates of no response, resembling the ones sent to the Mackinac County Treasurer, followed in January and February 2025. (Dkt. No. 29, at Exh. 3 & 4.) The TRUE BILL prepared by Mrs. Brayan with regard to the Genesee County Treasurer purports to be an "agreed upon judgment' in the total amount of $80,000 for four instances of trespass by County employees on the Debtors' properties. (Dkt. No. 29, Exh. 4.) Mrs. Brayan recorded a DISCHARGE OF PROPERTY TAX in Genesee County on May 19, 2025. (Dkt. No. 29, at Exh. 5.)

The responses filed by the Genesee and Mackinac County Treasurers argue that the Debtors' motions seek to enforce "contracts" that simply do not exist. Instead, they argue that the Debtors sent the Treasurers unilateral correspondence imposing obligations to respond that have no basis in law. Under these circumstances, the Treasurers assert that no valid contract was formed.

The court agrees. Questions of contract interpretation and enforcement are governed by state law. *In re Great Lakes Comnet, Inc.*, 569 B.R. 693, 698 (Bankr. W.D. Mich. 2017) (applicable state law governs contract interpretation). Under Michigan law, an enforceable contract requires a valid offer and acceptance. *Hergenreder v. Bickford*

10

*Senior Living Group, LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (discussing contract formation in the context of an alleged arbitration agreement) (citing *Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 540 N.W.2d 777, 780 (Mich. App. 1995)) (additional citation omitted).   An offer is "the manifestation of willingness to enter into a bargain" and acceptance occurs when the one who receives the offer "manifests an intent to be bound" by the offer and the legal consequences flowing from it. *Hergenreder*, 656 F.3d at 417 (citations omitted).

It is not clear to the court that the "Conditional Acceptance" documents prepared by Mrs. Brayan constitute an offer of anything.   Instead, they primarily seek "document evidence" regarding the properties in question and legal justification for the Treasurers' authority to collect taxes with regard to those properties.   However, even if the documents sent to the taxing authorities by Mrs. Brayan are viewed as valid offers, there is absolutely no indication that the County Treasurers ever accepted the positions, allegations, or terms contained in her proposals.   Although Mrs. Brayan urges the court to construe the Treasurers' failure to respond to her documents as "acquiescence" to the statements contained therein, the general rule under Michigan law is that "silence alone will not constitute a valid acceptance."   *Turner Associates, Inc. v. Small Parts, Inc.*, 59 F. Supp.2d 674, 681 (E.D. Mich. 1999); *see Wadsworth v. New York Life Insurance Co.*, 84 N.W.2d 513, 518 (Mich. 1957) (silence will constitute acceptance only under special circumstances, such as "where silence is accompanied by acts of the offeree . . . which warrant an inference of assent") (citation omitted).   Here, the County Treasurers took no action which would indicate their assent to Mrs. Brayan's claims.   Their only response was *inaction* in the face of Mrs. Brayan's unilateral statements, allegations, and deadlines.

11

The Debtors have failed to establish that the Treasurers had any duty to respond to their proposed documents.  In fact, as counsel for the Genesee County Treasurer pointed out at the hearing, county treasurers lack the authority to forgive property taxes, even if they wanted to do so.  No one disputed this assertion or argued otherwise.

In addition to the basic components of offer and acceptance, Michigan law also requires elements including proper subject matter, legal consideration, and mutual obligation for formation of a valid contract.  *Hergenreder*, 656 F.3d at 417 (citing *Hess v. Cannon Township*, 696 N.W.2d 742, 748 (Mich. App. 2005)).  The Debtors have failed to establish these necessary elements.  As noted, forgiveness of property taxes is not a proper subject for a proposed contract with a county treasurer, who lacks the authority to agree to such relief.  The documents submitted by the Debtors do not show that they proposed to provide any consideration, such as taking or refraining from any action, in exchange for the Treasurers forgiving or not collecting property taxes.  The Debtors' documents required unilateral action by the Treasurers, not mutual obligation of both parties.

Because the Debtors have failed to establish that the documents they prepared and sent to the County Treasurers satisfy even the most basic elements of a valid contract under Michigan law, their motions to enforce contractual obligations are denied.

B.      Debtors' Motion to Enforce the Automatic Stay with Sanctions
        and Motion for Contempt of Court and Obstruction of Court Order.

The Debtors' motions to enforce the automatic stay and for contempt of court relate to actions taken by the Genesee County Treasurer in conducting a prepetition foreclosure on the three properties in Genesee County and the actions of the Treasurer's successor

in interest, the Genesee County Land Bank, in subsequently seeking to evict the Debtors from the property.

The Treasurer's response indicates that the County filed a tax foreclosure petition in the 7th Circuit Court for Genesee County on May 31, 2024.  (Dkt. No. 38, Exh. 4.)  The state court set February 11, 2025, as the date of the foreclosure hearing.   (Dkt. No. 38, Exh. 5.)  The hearing was held, as scheduled, and the Debtors did not appear.  The court entered its Final Judgment of Foreclosure on February 11, 2025.  (Dkt. No. 38, Exh. 9.)  The Debtors did not redeem the property by the deadline of March 31, 2025, and as a result, title to the properties vested in the Treasurer on April 1, 2025.  All of this occurred well prior to the filing of the Debtors' bankruptcy petition in July 2025.

It is black-letter law that the automatic stay comes into existence as of the filing of the bankruptcy petition, which occurred in this case on July 24, 2025.  *In re Webb*, 472 B.R. 665, 2012 WL 2329051, *12 (6th Cir. B.A.P. Apr. 9, 2012) (unpublished table decision) ("It is elementary that the automatic stay comes into existence automatically and immediately upon the filing of a petition in bankruptcy.").  It follows that actions taken prior to the filing of the petition cannot violate the automatic stay.  Because the actions taken by the Genesee County Treasurer in pursuing foreclosure all pre-date the bankruptcy filing, the Treasurer did not violate the stay and the Debtors' motion to enforce the automatic stay against the Treasurer is denied.

To the extent the Debtors' motion challenges the prepetition foreclosure proceedings themselves as invalid or as "illegal debt collection activities," well-settled jurisdictional and preclusion principles bar this court from considering that claim.  Under the *Rooker-Feldman* doctrine, this court lacks jurisdiction to engage in appellate review

13

of state court decisions like the Final Judgment of Foreclosure in this case.  *See Isaacs v. DBI-ASG Coinvestor Fund III, LLC (In re Isaacs)*, 895 F.3d 904, 912 (6th Cir. 2018); *Klinge v. VandeCar*, 2013 WL 754437, *2 (W.D. Mich. Feb. 27, 2013) (holding, in a non-bankruptcy case, that the federal district court lacked jurisdiction over a plaintiff's claims challenging state court foreclosure judgment on the basis that he held allodial title to property, in part because such claims "squarely fall[]" under the *Rooker-Feldman* doctrine).  If the Debtors wanted to challenge the validity of the prepetition Final Judgment of Foreclosure, that challenge was required to occur in the state courts.

However, after the filing of the bankruptcy case, on September 3, 2025, the properties were sold to the Genesee County Land Bank, a separate entity from the County Treasurer.  (Dkt. No. 54, Exh. A.)  At this time, the Debtors no longer had any type of ownership interest in the property but, according to Mrs. Brayan's undisputed statements at the hearing, were still living there.  The Land Bank, likely aware that someone was living on the property but unaware of their identity, sent a Notice to Quit to all unknown occupants of 8525 Fenton Road on September 22, 2025.  Although these actions were taken postpetition, it is undisputed that neither the Land Bank nor any individual representing the Land Bank was included on the creditor matrix at the time.  Therefore, the Land Bank and its representatives did not receive notice of the Debtors' bankruptcy petition.  The response filed by Jeremy Piper, the Land Bank's attorney, indicates that neither he nor the Land Bank were aware of the occupants' identity at the time these notices were sent.  At the hearing before this court, Mrs. Brayan represented that she served Michael Freeman, Executive Director of the Land Bank, with notice of the bankruptcy case on September 30, 2025.  (Tr. at 35-36.)  However, the document she

14

cited in support of this claim is covered with phrases handwritten in black marker.  (Dkt. No. 50, Exh. 1.)  The document, which appears to be a copy of the Notice to Quit, is illegible due to the handwriting.  Other than a reference to the automatic stay among the scribbles, there is no indication of the Debtors' names or that they had filed bankruptcy.

On November 25, 2025, the Land Bank filed a summons and complaint to recover possession of the property in the 67th District Court for the State of Michigan (referred to herein as the "eviction proceedings").  On or around December 1, 2025, an unknown person, presumably either Mrs. Brayan or someone representing the Debtors, filed documents with the state court Clerk of Court that included a notice of the filing of the Debtors' bankruptcy case and copies of the summons and complaint with the words "VOID" and "Violation 11 USCode 362" handwritten on them.  (Dkt. No. 54, Exh. B.)  At the hearing before this court, Attorney Piper indicated that the state court Clerk provided the Land Bank with copies of these documents.  (Tr. at 32.)  Although the documents included a Notice of Bankruptcy Case Filing and copy of the summons and complaint in the eviction proceedings, he argued that the documents did not provide a way for the Land Bank to connect the Debtors to the property at issue.  (*Id.*)  The court agrees these documents were not sufficient to give the Land Bank or Attorney Piper notice of the bankruptcy case and its relationship to the eviction proceedings.[10]

An initial pretrial conference was held in the state court on December 15, 2025. The Debtors did not appear.  However, Attorney Piper indicated that they "discussed it

---

[10]     Similarly, the court concludes that these documents were insufficient to provide notice of the bankruptcy case to the state court or the state court judge.  The Debtors have not come forward with any evidence that they filed a Notice of Bankruptcy Proceedings as required by Mich. Ct. Rule 2.421, or any other documents with the state court that would connect them (and the fact they had filed for bankruptcy relief) to the pending eviction proceedings.

with the district court judge" at the hearing, and "out of an abundance of caution" the state court adjourned the matter to December 29, 2025.  (Tr. at 33.)  The Debtors filed their motion to hold the Land Bank in contempt with this court on December 26, 2025, although it is unclear from this court's docket when the Land Bank and the other named parties received notice of that motion.  For their part, the Debtors again failed to appear at the adjourned state court eviction hearing on December 29, 2025, and it appears that Judgment of Possession was entered by the state court that same day.[11]  At the hearing before this court, Attorney Piper confirmed that a Judgement of Possession was entered on December 29, 2025.  (Tr. at 33.)  He expressed his belief that the Land Bank was now entitled to seek an order of eviction but stated that it has voluntarily stayed any such enforcement action pending this court's determination regarding applicability of the automatic stay.  (*Id*.)

It is clear from the record before this court that to the extent the Debtors ever held an ownership interest in the property at 8525 Fenton Road, they no longer held any such interest as of the filing of the bankruptcy case due to the prepetition foreclosure.  It appears, however, from Mrs. Brayan's uncontested statements at the hearing, that the Debtors likely occupied the property with the permission of its owners (initially, her parents, and later an LLC that she controlled) prior to the foreclosure action and remained in possession of the property thereafter.  The Sixth Circuit has likened this type of holdover possession to a tenancy by sufferance, and has held that a "tenancy at sufferance is a possessory interest in real property within the scope of the estate in bankruptcy under

---

[11]     The Debtors attempted to supplement the record with an exhibit that appears to be the Judgment, *see* Dkt. No. 62, but the signature and date on the purported judgment is illegible due to handwritten notations on the document.

16

section 541." *Convenient Food Mart No. 144, Inc. v. Convenient Indus. of America, Inc.* (*In re Convenient Food Mart No. 144, Inc.*), 968 F.2d 592, 594 (6th Cir. 1992); *see Mills v. County of Lapeer*, 498 F. App'x 507 (6th Cir. 2012) (unpublished opinion) (discussing tenancy by sufferance under Michigan law).

The automatic stay provided by § 362 of the Bankruptcy Code applies both to the commencement or continuation of actions against the debtors and to acts to obtain possession of or exercise control over property of the estate. 11 U.S.C. § 362(a)(1) & (3). Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993) (holding that such equitable circumstances might exist where the "debtor unreasonably withholds notice of the stay" resulting in prejudice to the creditor or "where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result"). "This rule is true even if the creditor had no notice of the stay." *Tyson v. Hunt (In re Tyson)*, 450 B.R. 754, 764 (Bankr. W.D. Tenn. 2011) (citing *In re Smith*, 876 F.2d 524, 526 (6th Cir. 1989)). By contrast, a willful violation of the stay, of the type that would entitle the Debtors to damages under 11 U.S.C. § 362(k), only occurs when the creditor knew of the stay and violated the stay by an intentional act." *TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (6th Cir. B.A.P. 1999).

In this case, the court finds that the Debtors' motion fails to establish that the Land Bank had notice of the bankruptcy case prior to entry of the state court Judgment of Possession. This failure precludes a finding that the Land Bank willfully violated the

17

automatic stay such that an award of damages is appropriate under § 362(k).[12]  The court concludes, however, that the commencement and continuation of the state court eviction proceedings after the filing of the Debtors' bankruptcy case violated the automatic stay. The Land Bank has not appeared and has not argued that any equitable circumstances exist that would excuse these violations.  The Judgment of Possession entered by the state court on December 29, 2025, is therefore void.  Nothing in this opinion, however, precludes the Land Bank from seeking relief from the automatic stay and, if successful, from reinstituting an eviction action in the state court.

## IV.  <u>CONCLUSION</u>.

For the reasons set forth herein, the Debtors' motions to enforce contractual obligations, to enforce the automatic stay, and for contempt of court shall all be denied, except that the latter motion is granted to the extent the Land Bank pursued possession and eviction postpetition.  An order shall be entered accordingly.

---

[12]     The same is true for the individuals referenced in the Debtor's motion – i.e., the Land Bank's attorney, Jeremy Piper, its Executive Director, Michael Freeman, and the state court judge – none of whom had any greater notice of the bankruptcy case than the Land Bank itself.

There is no evidence that the Genesee County Treasurer participated in the eviction proceedings or took any other actions against the Debtors after the filing of the bankruptcy case. For that reason, the motion for contempt against the Treasurer personally shall be denied.

**IT IS SO ORDERED.**

**Dated March 27, 2026**




James W. Boyd
United States Bankruptcy Judge